We will hear argument first this morning in case 2334, San Antonio v. Hotels.com. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. Rule 39 authorizes district courts to exercise discretion in denying or reducing taxable costs under Rule 39e. And the Fifth Circuit's contrary position ignores the rule's plain language, makes nonsense of its structure, invites a host of obvious practical problems, and if adopted here, would dramatically upset settled practice in every single jurisdiction nationwide, including, ironically, in the Fifth Circuit itself. Respondents have now wisely conceded that Rule 39e costs are discretionary. The only question is which court has the power to exercise that discretion. We say the district court because Rule 39e expressly says that Rule 39e costs are taxable in the district court. That clause embodies a permissive term in making a textual assignment to the district court, not the appellate court, and it does so against the explicit backdrop of provisions like Section 1920 that delegate textual discretion over the same overlapping costs to the district court. This straightforward design pushes down collateral, fact-bound issues to the tribunal that is best equipped to take evidence, make a record, resolve factual disputes, and address these new issues in the first instance. Now, respondents say that Rule 39 vests only the appellate court with discretion, but their only hook for that belief is Rule 39a, which is the rule's only provision that provides any role for the appellate panel. That rule, by its express terms, dictates only against whom costs are assessed. It says nothing about what those costs should be. Under the rule's design, the panel doesn't have access to the relevant information at the time of the subsection a determination. The panel doesn't have a formal cost request. It doesn't have any relevant evidence. It doesn't have a record on costs because there is no record on costs, and it doesn't know the opposing party's objections or the reasons certain costs should be denied or reduced. A court cannot intelligently exercise discretion without access to the relevant information, and the rule is specifically designed for the relevant information to come out after the Rule 39a determination is made. Mr. Geiser, this is a matter that's dealt with in the local rules, and perhaps my information is dated, but it seemed to me that if you practiced before the court on a regular basis, you'd know what the rules and the customs were, and if not, you would ask the clerk, and he or she would tell you. And I think what they would tell you is one of two things. First, they say, we deal with that problem up here. You know, haven't you read Rule 39a? And if there's a dispute, I'll go ask the writing judge what he or she wants to do, and if there's still going to be a fight, we'll send it down to the district court. Or the clerk is going to tell you, you go down to the district court, haven't you read Rule 39e? And if there's still a fight down there, they'll bring it up here. But it seems to me that your rule would sort of standardize all those local practices, which as far as I can tell, haven't really been a problem, because you say the Court of Appeals has no authority over this, and it has to go to the district court in the first instance. Is that right? Well, we say it has to go to the district court, and so does the Fifth Circuit. If you look to page 10 of the petition appendix, the appellate court in this case said that Rule 39e costs are properly sought before the district court. It's totally unclear, then, how the appellate court can exercise discretion when the cost request for those costs under the Fifth Circuit's own practice doesn't even arise at the appellate level. They have no idea what those costs will be. And in terms of local rules, the federal rules of appellate procedure specifically say that courts cannot adopt local rules that trump the provisions of express rules. Yeah, I'm sure I remember it does say that, but I'm not sure that that's followed as strictly as you suggest to impose. For something as minor as costs, which is a minor thing in 90-whatever percent of the cases, I do think that different courts of appeals follow different practices, and I'm not sure it's caused a real problem. Well, again, Your Honor, I think the courts of appeals have generally followed the same practice of deferring all these issues down to the district court, and it works well there. There's no reason that a district court can't handle these collateral fact-bound cost issues. What will create a problem is bifurcating the process and trying to figure out with some, so far I haven't heard it, articulable basis for distinguishing the kinds of issues that the appellate court should handle versus the kinds of issues that the district court should handle. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Geiser, following up on the Chief Justice's question, it would seem that you knew that you certainly were aware of the rule in the Fifth Circuit, so why wouldn't you proactively object to the cost taxation before the Fifth Circuit? Well, I think for a few reasons, Your Honor. One is it's not clear when you would proactively make that request. I know my friends on the other side have suggested you should do this in your merits briefing. Now, of course, Rule 28A specifies the required items in a merits brief as 10 different items. It doesn't say anything about cost, and it doesn't really make much sense to ask parties to raise these preemptive objections based on future predictions of what an opposing party might request hypothetically on remand if they win and if the panel assigns costs. So the alternative, then, is raising it in a rehearing petition. But this isn't really the proper subject of a rehearing petition. So that's why my friends are really struggling. These are very able lawyers, and they haven't come up with any workable way to get relevant information to the appellate court. What makes more sense is send it down to the district court. These are collateral issues. They can deal with them. They deal with them under Section 1920. They deal with them under Rule 54D. They do a good job at it. There's no need to create this complexity when the rule itself has a simple design that simply says when you're dealing with these four categories of costs that are likely among all the cost issues to generate fact-bound disputes, let's send it down to the district court to handle in the first instance. The initial cost didn't seem to be out of line. It was just... I think it was under $1,000. This is quite substantial because you're around $2 million. Is this an outlier? And how often do cases like this come up in the Fifth Circuit? I think it is a bit of an outlier, especially to have a cost award of this magnitude, which is why, again, what typically works best is the district court can handle quibbles about little minor cost disputes. The appellate panel doesn't have to spend its time with that. They typically address the merits of the case. They say which party is the prevailing party. That's what subsection A is all about. And then they send it down to the district court to handle the rest. Can you, other than your case, can you point to any other case recently in the Fifth Circuit where this has caused a significant problem? I can put there is a case, and we cite this in our petition. It was a case involving Erickson where there was another massive superstitious bond. And in that case, the district court said it lacked any discretion under the Fifth Circuit's outlier practice to deny or reduce a cost award. But again, the real problem here is the Fifth Circuit itself says, don't bother us with Rule 39E costs. They made that clear again in this very case. They said, put in that request in the district court. Yet then they tell the district court, you can't exercise discretion if some of those costs are improper. So it's really a system that doesn't work well, but does work well under the federal rules. And the way every other circuit applies those federal rules. Thank you. Justice Breyer? Can we not read the rules to... ..consistent with what the Chief Justice said, which I would guess is the practice in most places? You look at A, and it says, for example, if the judgment is reversed, costs are taxed against the appellee. Which costs? Well, the ones listed in E. So what the circuit would do is it would decide what the costs are, but if there is a dispute, refer it to the district court. And we would assume that that is the rule, unless the circuit says in a particular case, or in general, that there's a different rule. What's wrong with that? Well, I think what's wrong with that, Justice Breyer, is that when the circuit is making that subsection A determination, they often will have no clue what costs... Well, that's my point. I mean, I get these things for costs all the time, and we just normally follow the rule. I'm saying you would normally just do what A says and decide it here, unless there's a dispute. And then what would happen is just what I said. If there's a dispute, we'll refer it, as you correctly point out, to the district court, which knows more about it. I've just repeated my question. I'm saying you're right. The district court knows more about the dispute normally. So that would be the default. But you wouldn't have to go to the district court. You'd go here and apply, knowing that if there's a dispute in general or in the specific case, the court of appeals refers it to the district court for resolution. Okay? Same question, third time. What's wrong with it? I'll try to give a better answer. I think what's wrong with it is that you don't know what disputes will arise under the Rule 39E cost specifically until you get to the district court. And at that point, the mandate's issued. So the district court takes this up after the appellate court is done with it. And then at that point, that's when the party puts in the request for these massive costs. That's when the objections come out. And then the district court says, oh, no, it turns out there might be a reason to deny or reduce costs. But under the Fifth Circuit's rule, you needed to ask that at the appellate level. But at the appellate level, when they actually have power over the case and are looking at it, you don't ask for the Rule 39E. I got that point. I'm just saying, if I were sitting in the First Circuit, I'd say, you go to the clerk. If this is really a problem, write our rule to be just what I said. You'll do exactly what you want, because that is the rule of the First Circuit where there is a dispute. Again, Your Honor, I think the rule makes this simpler in assuming that the district courts are perfectly capable of handling these things. The appellate court simply says, this is the party that can put in the request for costs, and then they can be done with it and focus back on the merits of appeals instead of dealing with collateral cost issues that district courts can handle. Thank you. Justice Alito? What happens if a court of appeals, let's say, affirms two of a district court's holdings, but reverses one? Under 39A4, couldn't the court of appeals apportion the costs proportionately and say that the appellant had to pay two-thirds of the costs, and the appellee would have to bear the other third? Would you say that in that situation, the district court would have discretion to make a different allocation? What I'd say, Your Honor, is that it's very rare for that to happen at all. Normally, what the appellate court does is it decides in a mixed judgment like that, either that neither party is entitled to cost, or it chooses the party that really won more on the appeal, and then the district court can take into account how successful that party was in deciding to reduce the cost. Nothing prevents the appellate panel from saying, although we're awarding costs to the appellant, the district court should take into account the degree of success on the appeal. But I think the better reading of the rule is that the specific allocation itself is done by the body that's assigned with figuring out the proper taxable costs for those designated items. Well, three of the four items in 39E seem to be fairly straightforward. The preparation and transmission of the record, the reporter's transcript, the fee for filing a notice of appeal. I don't see why the district court is in a better position than the Court of Appeals to decide those. Now, as to the supersedious bond, the district court had to approve the bond, and you presumably knew how much, the amount of the bond. Why does it make sense to have the district court review the very thing that the district court approved? Why wouldn't it be more sensible for that to be reviewed by the Court of Appeals? Well, I think, Your Honor, because when the district court approves the bond, it may not know if there were other alternatives that the moving party could have sought. It doesn't know if the other side has objections to the bond or the rate obtained. And so there's really no reason to focus on it at that point. The cost issue becomes ripe when the cost request is put in under the rules design and under, in fact, the Fifth Circuit's own practice in the district court. So I think at that point, the district court is just as well-suited as the appellate court to examine fact-bound disputes and say, would I have waived the bond requirement? Could you have obtained less expensive security? Were there a reason that you didn't do that? Did you have the opportunity at that point, at the point where the district court approved the bonds to raise objections? We could have, Your Honor, but I think that the respondents are in the best position to know, based on their own net worth and their own financial situation, whether they are capable of obtaining alternative forms of security. It's not really our job to ask them, can we look at your finances and peek under the hood and see if there was something better you could have pursued. They came to us with the bond request. And as the lead plaintiff on behalf of a class, the city had a pretty sherry obligation to make sure the judgment is protected for the class. And the other side offered to post a bond, and that was their one and only suggestion. All right, thank you. Justice Sotomayor? Counsel, did you know how much the bond was when it was sought to be placed at the district court? I believe we either knew the cost or a rough estimate of the cost, yes. All right, so you've known these costs, you knew this cost. Now, going back to what you said to us from the beginning, so that I understand, you knew what they were, you had an opportunity, if you chose, to tell the circuit court, we know the cost is high, we don't believe it's just, do you wanna hear it or do you wanna let the district court decide that? Why can't you pursue that sort of process? Your Honor, I believe that the rule could be rewritten to embrace that sort of process, but under the Fifth Circuit's own precedent, and again, this is on page 10 of the petition appendix, the other side isn't even supposed to put in the request for the bond until they get back to the district court. Well, that's my point. Are you saying that the Fifth Circuit won't let you raise that issue at all or that it'll just say, let the district, if you did what I just said, which is what happens in some other circuits, what do you believe the Fifth Circuit would do? If you went in and said, we believe this bond is unreasonable, unnecessary, whatever the argument is, what would the Fifth Circuit have done? I'm actually not sure because they could say it's not ripe yet. The other side hasn't even asked for their bond premium because they're supposed to do that in the district court, but I'm also not sure when we would have done that. We could have done it in our merits briefing, but then we're saying- No, you could have done it when the bill of costs was put in. After the judgment is rendered, you have 14 days, the other side puts in a bill of costs for the three or four items that it sought, and at that point, you could have said, we're okay with these four, but we're not okay with the bond cost. Fifth Circuit, we think it was unnecessary, or we think it was unreasonable, or whatever your argument is, why couldn't you have done that then? At that time, the bill of costs for the Fifth Circuit doesn't even have a listing for the bond costs. So we would have to object saying, although this isn't on the other side's request, if they eventually ask for this in the district court where they're supposed to, this would be our objection to that hypothetical- One last question, I think I understand what you're saying, which is the way things work, the circuit court only looks at those two or three items and tells you to go to the district court for the others. And if you go to the district court and we say they have no discretion, you believe you have no way to go back to the circuit court to look at that decision, is that correct? I think that is correct. Well, in fact, it is correct, because you raised your objections and the Fifth Circuit said the district court couldn't look at it, but it didn't look at your objections either. So it's really a due process problem you're talking about. I think that's exactly right. It's effectively a catch 22. It says that we're the only ones that can exercise discretion, but don't bother us with the Rule 39E cost bothers the district court, who said hands are bound by the Fifth Circuit's unique understanding of the rule. Justice Kagan? Mr. Geiser, let me talk about how you get to your argument from the text, because I'm not sure I quite understand it. If you look at Rule 39A, would you agree with me that what 39A does is it sets default rules for who pays costs? Yeah. Who pays costs in the ordinary case, right? Correct. Now, and then 39A says, unless the court orders otherwise, and the court there, you agree, is the appellate court, isn't it? Yes. So the court can take these, the appellate court can take these default rules and change them. It can say, you know, the appellant pays if a judgment is affirmed, but for whatever reason, we want to do something otherwise. Is that right? That is right. So that sounds like a lot of discretion. So then it would seem, I mean, how many courts can have discretion? Isn't that just basically saying the Court of Appeals has the principal discretion? I think they do, but in a limited area. It's the discretion to decide against whom costs are assessed. It does not say, for example, in 39E, that the costs are taxed in the district court unless the appellate court says otherwise. It says, full stop, the district court is responsible for these costs. Well, maybe that the 39E is talking about something different. So if you read it against, for example, 1924, 1924 says that before you tax costs, somebody has to figure out whether the item is, I'm using the language here, correct and necessarily incurred. So that's the kind of thing where you come in for, you say, I paid $1,000 for the transcript and somebody else says, no, it was $2,000 or something like that. So why isn't what the district court has to do is basically just figure out whether the costs are correct and necessarily incurred? Your Honor, I think because it would be at odds with the rule structure and design, the appellate court then would have to decide whether to deny or reduce costs without knowing what they are. Say the premium was 150% of the market rate. No one knows that until the request is coming for the cost. And then at that point, I'm not sure if the district court then is saying that's an improper cost or whether the appellate court should exercise discretion in reducing it, even though that is the cost they in fact paid. So the appellate court simply is not in a position to intelligently exercise discretion without having the relevant information that I think everyone agrees that information comes out at the district court. Thank you, Mr. Geiser. Justice Gorsuch. Mr. Geiser, I'm struggling with the due process argument as it were. What would have prohibited your clients from raising the question about the bond costs before the court of appeals at some point? Your Honor, I think we'd have to come up with a vehicle for doing that. I would have thought maybe your brief or a supplemental filing, which happens in a lot of courts of appeals, or maybe your petition for re-hearing. I think you filed one for the panel re-hearing, also one from bond re-hearing. How about any of those four vehicles? What was the discussion about those? Your Honor, there's nothing that precludes a party from trying to raise the cost issues at that point, but this should be very clear. When the re-hearing petition was filed in this case, there still wasn't a request for bond costs. In fact, the only requests were the small- It's in the rule. You know it's coming or you're on notice that it's coming. This is gonna be taxable against you absent the court of appeals saying otherwise. Maybe you didn't get an embossed invitation, but the rule's there. And you had, I think, four opportunities by my count to raise it. Why should we be concerned? Your Honor, I think just in terms of just envisioning the way the process most sensibly works, it's asking the opposing party to file an objection to something that hasn't yet been raised yet. So it's predicting, I think this is coming. Why isn't it raised? It's raised by trap 39. So this cost is gonna be taxed against you unless the court of appeals says otherwise. I would have thought that, again, maybe not an embossed invitation. Maybe you don't think that's sufficient notice, but if that's not sufficient notice, I guess I just wanna understand why isn't that sufficient notice? Your Honor, because it's not the rule itself that activates the right to the cost. The party entitled to cost under the rule has to file a verified bill of cost. They have to formally seek them. If they don't seek them, they get no cost. And if they didn't incur any costs, they get no cost. And if the costs are improper- You knew that this bond was going to be, did have costs attached to it. That's not a surprise to you. And you knew that under trap 39A, it was going to be taxed against you. Again, just what piece of information was missing? We presumably knew that the other side will likely seek the cost, but until they actually seek it, maybe they decide not to. Maybe they're feeling charitable. Maybe they reduce their request, knowing that- If you're concerned about that, maybe you ought to raise it though. I mean, why wouldn't you raise it if you're genuinely concerned about it? You know, it's $2 million and your client's gonna take the United States Supreme Court over it. Well, why wouldn't it have been incumbent upon you to raise that issue at the Court of Appeals? Which has the case before it four times. Because Your Honor, under the rule itself, the district court is the appropriate tribunal where we can make that our objections after the other side has actually put in the formal request for costs, as opposed to hypothetically objecting to future costs that haven't yet been lodged with any court. Thank you. Justice Kavanaugh. Thank you, Mr. Chief Justice. Good morning, Mr. Geiser. My understanding of this is that the dispute is not really whether the district court has authority with respect to costs. The dispute is what the district court can do. And I guess the question is, looking at the structure, the two-tiered structure of this with 39A and 39E, why isn't the better reading that the district court can determine the amount of the particular costs listed in 39E and disputes over whether a particular amount was correct or not, as Justice Kagan points out? But the district court does not have the authority over whether to award the costs at all or to reallocate the costs from what the appeals court has said. Why isn't that the better reading of the structure? I think two reasons. The first is from a practical standpoint, that then puts the onus on the appellate court, which generally has better things to do, to preemptively decide how to exercise discretion to deny or reduce a cost without having any of the particulars relevant to that cost. Well, the appellate court just says costs are taxed against the appellant or costs are taxed against the appellee, or, as Justice Alito points out, makes an allocation. And once that's done, the appeals court judge, at least in my experience, doesn't get back involved. Then it goes to 39D for the appeals court costs and 39E for the district court costs. But that allocation, whether it's 100% or some separate allocation, then defines what the circuit clerk does and then what the district clerk does with the particular costs. And there may be disputes over the amounts, but the district court can't clerk or judge can't reallocate. Isn't that how it all fits together? It's yes and no, Your Honor. The no part is that everyone agrees that someone has discretion to look at all the relevant factors in the case, including factors specific to why a bond was requested in the amount and to deny or reduce it in appropriate circumstances. So someone has to be in a position to make that determination. And I agree with you. The appellate court normally refers simply to the default rule and they move on and they're not bothered with this again. Well, I just wanna maybe say one thing on that to Justice Alito. I'm not sure you specifically answered his question when the allocation is done by the court of appeals, how can the district court reallocate? And you said that doesn't really happen a lot. Well, I did that more than a few times when I was allocating costs on the court of appeals. Well, Your Honor, again, I think just flipping through the F-3rd, it's pretty rare to see that happening. But if it does happen- Well, it doesn't get reported in case law, but it happens. It can, but I don't think that's necessarily inconsistent with our position because someone still needs to exercise discretion and looking at each individual element of costs and saying, should this be denied or reduced?  to whatever that base amount is. I guess the point is when the court of appeals is doing it, it's really not looking at the amount of the costs and maybe this is a flaw in the system. It's just looking at who won and who lost. And maybe it's kind of a 70-30 or 50-50 or 100-0 and just making that allocation. And then the amounts are determined by the circuit clerk and the district clerk. Exactly, Your Honor. But if I can give you an example, I think it might illustrate this. Say that the bond again, was obtained at a grossly excessive rate for no reason whatsoever. Then someone then presumably should reduce that. I think it's- Well, you tell the court of appeals that before it makes the allocation. That's Justice Gorsuch's point. I'm gonna let it go there though, counsel. Thank you. Justice Merritt. Good morning, Mr. Geiser. I wanna go back to some of the questions that Justice Kagan was asking you specifically about 28 USC 1924. So as she read the text to you and it's kind of my question too. I mean, the district courts have discretion to decide whether the costs are correct and necessarily incurred in the case. Is that right? That is right. So why isn't this just a dispute about how broad the district court's discretion is to decide whether a particular cost here the bond amounts were necessarily incurred? Because as I gather you're saying here, well, these weren't necessarily incurred. It wasn't necessary to get something that was this expensive. They could have done something different. Is that another way to frame this dispute? I think it is a potential way to frame the dispute. And I think it shows that someone needs to have some mechanism when they see a cost that's been incurred, even if they have a receipt for it, but that in the circumstances of the case should be reduced or denied in the exercise of discretion. And the simple question is who does that? Okay. And the Fifth Circuit has, are you saying that the Fifth Circuit approach says that there's basically no one because it falls through the cracks. So no one decides whether X or Y cost was necessarily incurred. I think that is correct. And I think the only way around that is to manufacture workarounds to the federal rules as opposed to simply following a very clear design where district courts are perfectly capable of doing this. They do it every day under section 1920 and rule 54D. Okay. And I want to ask you what you think this equitable discretion entails. I mean, you're focusing a lot on the cost of the bond, but I took you in your brief to also be saying things about, the district court's in a position to know about the litigation strategy or the conduct during litigation or the strength of the arguments. Did I misunderstand that? No, you didn't. District courts traditionally look at all sorts of factors, including will the cost, is the party destitute? Will a cost award drive them into poverty? All sorts of different factors that might not be apparent during the merits briefing when the panel is simply trying to decide the merits of the appeal, which is what the public courts traditionally do. District courts can handle these collateral issues. I mean, don't you think that the court of appeals, which has just resolved the appeal, is in a better position to decide what the strength of the arguments were? I mean, you know, Justice Kavanaugh's right. I mean, as a court of appeals judge, I allocated costs. And if arguments were close, you know, then maybe I didn't give 100% to the prevailing party. You know, it's not the district court doesn't see the merits of those arguments. I think the district court can certainly take into account what the appellate court has said, and the appellate court can guide the district court in doing that, but the appellate court won't often have access to other important aspects of the cost calculus, including material specific to the nature of the bond, which, you know, again, the appellate panel, I don't think knows or hears about a bond until you get to the cost stage. Well, counsel, let me just ask you one last quick question. I mean, in the respondents' brief, they say that you negotiated, I'm looking at pages 10 to 11 of the brief, you negotiated for a higher amount as time went on. So, I mean, you weren't surprised. We were not surprised that there was a bond and we wanted to bond out. You just were surprised that they tried to recover the costs at the end? No, your honor. We just felt that in light of the factors and the circumstances in this case, a full bond that ran, you know, for two and a half years in the district court without any action necessarily is inequitable to tax exclusively to us especially if alternatives were available. Thank you, counsel. A minute to wrap up, Mr. Geiser. Thank you, Mr. Chief Justice. Under our view of the rule, now we realize there certainly are other ways to structure a rule and to structure a system where you can get cost disputes and appellate courts maybe can spend their time and their bandwidth digging into these questions and creating a record and sometimes hearing witnesses and resolving fact-bound, fact-intensive issues. But the way the rule itself is designed and the way that it's applied in all the other circuits outside the Fifth Circuit makes better sense. It pushes the question down to the district court just as fee awards are pushed down to the district court, just as other cost questions are pushed down to the district court to resolve these issues in the first instance. District courts are not known for thumbing their noses at the appellate court and second-guessing the appellate court's determination. The fact is most appellate courts make the subsection A determination either silently by referring to the default rule or by simply saying cost to A, cost to B or no cost. It's really someone needs to exercise the discretion to look and see if a certain cost is improper or inappropriate and the body doing that needs access to the relevant information. And that relevant information best comes out at the district court level. Thank you, counsel. Mr. Salmons. Thank you, Mr. Chief Justice and may it please the court. Rule 39 identifies the limited costs that may be taxed on appeal and assigns the appellate court alone to decide the party's entitlement to those costs. Unless that court orders otherwise, 39A directs that all those costs are taxed, close quote, against the losing party. 39D and E assign the appellate court clerk and the district court or its clerk to calculate certain costs, but neither gets to revisit a party's entitlement to them. A point the rule confirms by limiting the district court to taxing for the benefit of the party entitled to costs under this rule. Petitioner flips the rule on its head. It argues that by making certain costs taxable in the district court, the rule confines the court of appeals to only deciding which party may be taxed costs while empowering the recently reversed district court to decide the fairness of awarding all, some or none of those appellate costs. Apart from the tax, longstanding precedent before Rule 39 refutes that position. This history confirms two things. First, a general appellate award of costs means all covered costs. And second, a district court assigned to tax appellate costs has no power to revisit the equities or award less than full cost. This case shows the problems with petitioner's approach. Thanks to the process required by Federal Rule of Civil Procedure 62, it is undisputed the appeal bonds here reflected reasonable market rates, the parties negotiated over their terms and the district court approved them. The bond amounts were increased twice at petitioner's insistence, permitting the recently reversed district court to entertain petitioner's meritless argument that it is unfair for a class representative to pay full costs will cause nothing but mischief and wasteful litigation. The decision below should be affirmed. Mr. Salmons, where is, before the Court of Appeals, how is the party challenging the costs or who will challenge the costs supposed to make that clear? Where does he raise that objection before the Court of Appeals? Yes, Mr. Chief Justice, there are several places where parties routinely do so. We've cited a number of cases on pages 41 and 42 of our brief that gives the examples. It is actually not uncommon for parties to raise it in a small way in their merits brief. It's also common to raise it- Just to stop, just to stop, yeah, stop there. That strikes me as awful tough. They're in their merits brief and they're making all the arguments about why they should win and then they end with a footnote saying, oh, by the way, if we lose, you know, we think we're gonna pay too much on the bond. That's asking a lot. Well, it's not the only place they have to do it. I'm just pointing out, Your Honor, that- I'm sorry, what's the next place? So the next place would be in response to the bill of costs that's filed with the clerk and the last would be a petition for rehearing or some other supplemental brief as Justice Gorsuch mentioned. And we cite plenty of examples of all of those. Well, but the petition for rehearing, it's not quite clear what the court is rehearing. I mean, a decision hasn't been made on that yet. So that also seems an odd spot. And if it's before the Court of Appeals, the Court of Appeals doesn't know anything about the matter, whether the bond was too high or whatever. All of those four items, it seems to me, are within the purview, at least, of the district court's knowledge. A couple of responses, Your Honor. I defer the court to the Goose case from the Seventh Circuit, which is one where, in a petition for rehearing, the party raised issues related to the appeal bond costs and asked for relief. And the Court of Appeals, in that case, considered it and then decided to defer to the district court on the issue. And so these issues do get raised, even including those that are related to 39E costs. The issue is about entitlement. And if a party wants to raise equitable issues as the wife, the other party should not be entitled to their costs. The place to do it is in the Court of Appeals, and that's what the Fifth Circuit holds. Well, I wonder if the dispute between the two of you is not so fundamental. Your friend on the other side seems to be saying you have to begin in the district court. And your position, I understand, is, well, that you can certainly refer it to the district court because they may be better at figuring out what the facts are, but you just want to say you don't have to. Well, in fact, Your Honor, I think the rule makes clear that the place you do begin if you want relief from the venerable presumption favoring a full award of costs is with the Court of Appeals. And of course, the Court of Appeals then has discretion to either grant relief. We cite cases that do that where they apportion it or they award two-thirds or they deny costs because of a party's ability to pay or some other, or they refer it to the district court, which is commonly done if there are fact issues that they think warrant further review. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, just as a matter of clarification for me, is there, other than Rule 39E, is there a statutory basis for the bond costs? There's not a specific reference, for example, in Section 1920 with regard to supersedious bonds, but it has been an element of, and a clear element of Rule 39 since its inception. And it predates that as well, going back many decades in local circuit rules. So it's an accepted form of cost, but it is not specified in the statute. Going back to the line of questioning from the Chief Justice, it would seem to me if you, if it's not raised on appeal and that you go back to district court with these substantial costs as they were here, you could have a, it seems ripe for sandbagging. So how do you get around that concern? Well, I really don't think there is one, Your Honor. Let's take, for example, the category of supersedious bond costs. That's the one category that can get large depending on the nature of the judgment and how much time has passed since it's reversed. But the federal rules already has an elaborate process to ensure that those costs are reasonable before they incurred, and that's Federal Rule of Civil Procedure 62. As this case illustrates, what Rule 62 requires is that the parties either agree to the bond terms, or if the plaintiff that holds the judgment objects that the district court scrutinizes and then approves the bond terms. And here they were agreed to, and all of the details about them were exchanged. Copies of the bonds were exchanged by email. We put all this in the joint appendix. There's no surprise here that these amounts were large. They were large because the judgment was large and because it took a long time to get the judgment reversed. But these were blessed by the district court in the front end. Of course it's fair and appropriate for the party that incurred those costs to get rid of an invalid judgment is entitled to them. There's not a need for a second round of discretion by the district court that's already approved the bond to second guess the entitlement of those costs into whether or not they are fair. Its place to exercise discretion was under Rule 62. But what you heard from a number of my colleagues is as sitting as Court of Appeals judges, they make adjustments to costs precisely because or in cases in which the decisions were quite close or as they suggested that maybe it's 60-40 or 70-30. Where would you make those kinds of adjustments in your process? Well, it's by the Court of Appeals, Your Honor, and a party can raise that request. Well, but how can the Court of Appeals make that adjustment when you didn't put it before the Court of Appeals? Well, I think there's a problem if you don't raise equitable grounds for deviating from the presumption in the Court of Appeals. I think at that point, I would argue it's waived. The party that determines equitable entitlement to cost is the party that decides, excuse me, the entity is the court that decides the merits. And that's the way the rule works under 39A. There are plenty of opportunities to raise that in the Court of Appeals. And it's simply not true that the Fifth Circuit somehow prohibits parties from raising those issues. Thank you. Justice Breyer. Thank you. Following on from Justice Thomas, I thought that Mr. Geiser said the reason that you cannot raise this in the Court of Appeals, in this case, in similar cases, is you don't know how much the winning side is going to ask for until the case is sent back. And when he first sees it, he's in the district court after the case is sent back. So obviously he didn't raise it. In the Court of Appeals, he didn't know how much you were gonna ask for. That's my impression. And if I'm right about that impression, wouldn't a simple rule be, if I were in the Court of Appeals writing the rule, I would say, we follow the rule here. It's in A, we tax costs accordingly taxed. And the part two of the rule says, if there's a disagreement about the appropriateness of the amount sought in these categories, the district court will resolve it. And then part C of the rule says, and if one of the parties wants a different system, they can ask us. So those are the two questions I have. Go ahead. The first one is what he said. Please do the first one first. I think I agree with that basic framework. The point I would make, Your Honor, is that- It's not my first question. My first question was, I don't wanna just repeat it, is I thought Mr. Geiser said the reason he couldn't object to your claim for bond costs in the Court of Appeals, he didn't know the amount you would ask for until you got back. Yes, Your Honor. Am I right? A couple of things. One, he's not challenging the amount. He never challenged the amount. The amount was agreed upon in advance, they negotiated it, and it was blessed. And that's almost always gonna be the case because of operation. The reason he cannot object to the appropriateness of the cost amount sought under bonds is because he didn't know what it would be, okay? Same question. Is he right or is he wrong? He's wrong, Your Honor, because what's at issue in the Court of Appeals is not the amount, it's about the entitlement to it. What he wants to do is say, don't give them all the costs they're asking for, adjust it. Or don't do it because this is a special situation. But he can't do that. He doesn't know, if not this case, other cases. This is the third time. Same question. Am I not being clear? He doesn't know what you're gonna ask for until you ask for it. And that amount, you find out what he's gonna ask for when you get back. Your Honor, I do think the premise is mistaken. Okay, that's what I understand. The operation of Rule 62, the parties know what costs are at issue if supersedious bond costs are involved. And they can ask for it in the Court of Appeals, but they're not asking for a relief on the specific amount. They're making equitable arguments about whether it's fair to make them pay all, they should pay none, they should pay less. Those are the kinds of arguments that gets raised. And if the Court of Appeals wants to, it can defer it to the District Court. We cite cases where that happens all the time, but the place to raise those equitable entitlement concerns is with the Court of Appeals. Justice Alito? Putting aside the advisory committee notes, suppose we read 39E literally. What do you make of the phrase, are taxable in the District Court? Taxable means capable of being taxed, not necessarily must be taxed. Well, I think that's right, Your Honor. And I think, keep in mind that under our reading, the taxing is not automatic. The party has to make a submission, a bill of cost. It's verified. It has to show that it actually incurred these costs and that they fit within the defined categories. I think the term taxable, are taxable, means the same thing in 39E that it means in this court's Rule 43, which says that the cost of the transcripts of records shall be taxable in the court below. That's the same language going all the way back to the 1870s in this court's rule, which was then the model for circuit courts and then for Rule 39, all these cases we cite in our brief, where as a matter of history, it's clear that the term are taxable is just telling you where the costs are taxed, but it is not providing discretion to revisit the question of entitlement. It's the court that decides the merits of the appeal that decides whether a party is entitled to their costs. What's left for the lower court is to decide have the costs been properly documented and do they fit within the defined category? And that's helpful to me. My other question is, can you just walk me through the procedure that you think is dictated by Rule 39? And I'll say, I agree with the Chief Justice. The idea of raising cost issues in the merits brief is very awkward. It's also a very poor fit for a petition for rehearing. So I think that's what's left is objections to the Bill of Costs. So walk me through the procedure that you think has to occur, particularly with respect to an issue like this regarding the supersedious bond. Sure, Your Honor. The case I might refer you to as a good example is the Moore case from the Second Circuit cited in our brief. That case, in response to the Bill of Costs filed with the circuit clerk, the party, the losing party, raised broad equitable concerns about all categories of costs, including those that would be taxed by the district court under 39E. The Second Circuit discusses its process for handling those kinds of objections. Yeah, well, just in really simple terms, tell me what's supposed to happen. And this all has to happen under a fairly compressed time schedule because you've got the problem of the issuance of the mandate. So there's an objection to the Bill of Costs. And what is the Court of Appeals supposed to do with an issue like the one here with the supersedious bond? That necessarily is gonna have to be sent back to the district court, isn't it, for factual determinations? How could the Court of Appeals review that issue? Well, again, I think a good example is the Goose case from the Seventh Circuit. What happens, Your Honor, is the party can raise those concerns. Take this case. The petitioner here was totally free to argue in response to the Bill of Costs that especially given the Fifth Circuit's rule that they should not be taxed supersedious bond costs because they are class representative and it would be inequitable to do so. I think the Fifth Circuit would not have had a difficult time to get through that as every circuit- My time is up, unfortunately. Thank you. Justice Sotomayor? Counsel, I guess the short answer to Justice Alito, and correct me if I'm wrong, is that you are basically saying the only practical time to raise this is at the point that a winning party files a Bill of Costs with the Court of Appeals that the losing party has an obligation to raise to the Court of Appeals any equitable considerations it has to change the allocation of costs. Is that correct? I think that would be the most appropriate time to do so. All right, now let me ask you a question, and I agree, and here you knew what the cost, the other side, I'm trying to cut to the chase, okay? Here the other side knew what the costs were and if it had any defense to those costs, equitable or those relating to it being necessary or unnecessary, it should have raised them to the Court of Appeals. That's your argument, correct? Yes, Your Honor. Now, you are not taking away from the district court your position that if you had gone to a sister corporation for this bond and paid 10 times the market value, the district court still had the power to say that was unnecessary, correct? Well, I think it likely would, although I would point out, Your Honor, that the place where that gets resolved is under Rule 62 before the costs are incurred. It happens that way, but let's talk about a different scenario, okay? One in which a person expects the record on appeal to have been, and the transcripts to have been done at X amount, whatever it is, okay? But all of a sudden the bill of costs comes in and it's the only time they see that it wasn't done at market rates, that it was done in some weird process, okay? Record was put together in some weird process and it's 10 times the normal cost. What happens in that situation? Your Honor, I do think there's a role for the court, excuse me, for the district court to ensure, as the Fifth Circuit would put it, that only proper costs are being awarded. Only necessary costs. So that would be under the rules already. So there, and in fact, the district court adjusted some of those costs for that reason in this case, didn't it? Well, it did, Your Honor, and including with regard to the bonds, to the extent it later came out that some of the premiums that were paid were after the Fifth Circuit decision. Let's assume that a person is prepared to pay what they expect to be the normal cost, it turns out, unbeknownst to them, that the cost turned out to be astronomical and they simply can't afford it. Who do they take that equitable argument to if they were unaware of how astronomical the cost would be? Not this case, not your case. I'm posing a hypothetical, okay? On the record reproduction. How can they get back to the Fifth Circuit to reconsider that decision? Mandate has issued, the district court doesn't have discretion. How do they ever get to put that before somebody? Your Honor, the place where that is appropriately raised is in the same place as before. No, if you don't know it, if you don't know it, counsel, you don't know it until you see it. Bond situation, you know it ahead of time. You know what the costs are. I'm talking about preparing the record or doing something else, but all of a sudden you see something and realize it's past my ability to afford, number one, it will bankrupt me, number two. And number three, my claims were substantial enough so I shouldn't have to undergo that. If I didn't know, how do I get that corrected? Your Honor, I do think those are often and appropriately raised in the Court of Appeals. And if the mandate's issued, they can always seek to recall the mandate if they want to adjust the entitlement determination. Justice Kagan? Justice Kagan? Mr. Salmon, let's suppose that on one level of discretion, I agree with you, which is the question about who can change these default rules of 39A, that only the Court of Appeals can change the default rules. Only the Court of Appeals, for example, can say, you know, the appellate doesn't get all its costs, it only gets 80% of its costs. But then there seems as though there's a second level of discretion. And this is what you were talking with Justice Alito about. He said, you know, E, 39E says taxable. That suggests some kind of discretion. What is that discretion that's taking place in the district court? And you said the district court is doing two things. The district court is deciding whether the costs were actually incurred, you know, properly documented, where are your receipts, all that, and is making sure that the costs that are being submitted fall within the defined categories. Did I get all that right? Yes, Your Honor. Okay, so, but then if you turn to 1924, 1924 suggests that the district court really has two functions, and there is discretion in these functions. One is to decide whether the costs are correct, and the other is to decide whether they've been necessarily incurred. And I take that language to be kind of, you're giving us this bill, and it's true, you paid it, but you didn't have to pay it. There was no reason for you to pay it, and it's just not fair to impose that bill on the other party when it's coming out of nowhere and you didn't need to pay it. Wouldn't you say that the district court has discretion to do something about that? Well, I think it certainly does, Your Honor, with certain categories of costs. Let's take, for example, 39E2 specifically says that the reporter's transcript is awarded as cost if needed to determine the appeal. But the point I would make with regard to supersedious bond costs is that effectively that determination should have already been made under Rule 62 before the costs are incurred. That's the whole reason for Rule 62's process is this one category that can get quite large. Before those costs are incurred, the parties get together and they either agree upon those bond terms or the district court overrules any objections and determines that they are appropriate. At that point, there really should not be much, if any, of an issue with regard to whether those costs were needed. And there's no exhaustion requirement that Petitioner seems to suggest with regard to supersedious bond costs. The drafters of Rule 39 were very clear in rejecting any arguments that supersedious bonds were not always necessary and elected instead to treat them as an ordinary and appropriate type of appellate cost entitled to the same presumption of recovery as the other categories of costs. Thank you, Mr. Sammons. Justice Gorsuch? Counsel, let me see if I understand putting it all together with supersedious bonds. So first, the district court has to, under Rule 62, make a ruling approving your bond proposal. And presumably there, the other side can make any objections they want as to the inequitable nature of the bond. That itself can be part of the appeal, too. Then we have the appeal, and they could, maybe they don't wanna raise it in their brief. Often parties do argue, well, if I lose, then at least give me this. But let's say we excuse them from that. Then they have a rehearing petition where they have lost. They could raise it there, knowing now that they're potentially on the hook. Then they get the bill of costs. They could raise it there for the Court of Appeals, and the Court of Appeals could either make some judgment then or, as I understand it, some courts of appeals will refer the matter to the district court expressly delegating their discretion to deal with the problem. And then, in any event, when we get back down to the district court on taxability, the district court must find the costs necessary. Is that a fair summary of your understanding of how the law works here? It is, Your Honor. I would add just one small additional point, which is that, as the rules are structured, if the party that has the judgment below is concerned about the potential costs related to an appeal bond, and, of course, it's on notice that it may have to bear those costs, so it has skin in the game, too, it can agree to either a reduced bond or to no bond to avoid those costs. So, the risk of surprise is really not here, and this case is a great example of that. Thank you. Justice Kavanaugh? Thank you, Mr. Chief Justice. Good morning, Mr. Sammons. On the overview that Justice Gorsuch just provided, which I think I agree with, and you used the word entitlement, the Court of Appeals determines the entitlement of each party to a certain percentage of the cost. It might be 100-0, or it might be something 50-50, or what have you. Is that how you see that? Yes, of course, the Court of Appeals also has the discretion to say, as determined by the district court, but most typically, it actually does the allocating, and that's what the rule envisions. Okay, so that's kind of the allocation of the pie. How big the pie is, in other words, is how much the costs are, is then determined by the circuit clerk for the 39-D cost and the district clerk for the 39-E cost, correct? Yes. Okay, and I think, maybe I'm wrong about this, but I think the concern might be that when the Court of Appeals is making the allocation, it's not aware of how large the cost might be, and if it knew, it might make a different allocation. I don't know if that's the concern, but if that is the concern, what's your response? Well, my response, Your Honor, is that we're dealing with very defined categories of cost. The costs here are limited by Rule 39. Most of them, there's very little risk that they will be too large. The copy rate, for example, is set by circuit rule. The one potential exception would be supersedious bond costs, but there you already have a process that's intended to interact with Rule 39 that ensures that the costs related to supersedious bonds are reasonable, that the parties have full notice of them, and that the district court has already exercised discretion with regard to their terms. And to the extent you want to bring it to the attention of the Court of Appeals, hey, you should think about the size of the cost here. This just isn't printing costs and the usual kind of costs that are in the thousands, not in the tens of thousands, hundreds of thousands, or millions. The time to bring that to the Court of Appeals' attention, you can do that in the Bill of Costs, in the objection to the Bill of Costs, or the Bill of Costs, correct? Yes, Your Honor, among other places. And it's just not the case that it's that hard to do. We have cited a large number of cases where parties have done just that. They have cited none for the proposition that parties can't do that, and the Fifth Circuit itself ensued. The whole point of the Fifth Circuit's position here is that it says, absent some limiting provision in the mandate of the Court of Appeals, the District Court has no discretion, which is a notice to the party that if you want some other allocation other than 100 to zero, or whatever else we've provided, you have to ask us for it, not the District Court. It's not saying you can't ask anyone for it. Yeah, and at that point, you already know the costs may be large in this kind of case, right? Supersedious bond costs surprise no one, Your Honor. Yeah, okay, thank you. Justice Barrett? Mr. Simmons, I wanna go back to Section 1924, and the District Court's authority to determine that costs are correct and necessarily incurred in the case. So the question presented asks, in part, whether the District Court has the discretion to reduce appellate costs. But I'm wondering, and it seems to me like this came out potentially in your interchange with Justice Kagan, you said that the supersedious bond costs were, you treated them as a bit exceptional because they'd already been approved by the District Court under the Federal Rules of Civil Procedure. So I gather that you're not really denying that the District Court, through 1924, has some authority to reduce when it reviews the cost for excessive copying, et cetera, but just that in this particular case of the supersedious bond, that it doesn't have the authority to reduce it because the time for that particular cost has come and gone. So do you see what I'm saying, that this is maybe a dispute about supersedious bonds and not more generally about the District Court's authority to take into account whether costs are necessarily incurred? Do I understand that correctly? Well, Your Honor, what I would say is that if you look at the terms of Rule 39E, for example,  the reporter's transcript, for example, there's a requirement to determine if they're needed for the appeal. The language for supersedious bonds is a bit different under E3. It provides for costs to preserve rights pending appeal. And I think that the process under Rule 62, certainly in the minor cases, it's hard for me to imagine an exception to that, already resolves that these were costs that were incurred to preserve rights pending appeal. And that means they're appropriately awarded and even the requirements of 1924. You're not disagreeing with me, right? You're just saying that when it comes, that the District Court may have authority pursuant to 1924 to adjust costs because it judges that they were not necessarily incurred. But you're just saying that supersedious costs are different because they've already been judged to be necessarily incurred. And that was part of the process in the District Court back before the case went up on appeal. I do think that that's a difference, Your Honor. And I don't think I'm disagreeing with your basic formulation of how 1924 works. Okay, and so let me just, we've talked about different kinds of equitable considerations that can come into account. One is the challenge that, listen, these costs are just too high because you could have gotten, you could have done your copying or gotten the bond rates more cheaply than you did. And then the other kind of concern is the one that Justice Sotomayor was raising, like a party's inability to pay, for example. And you're saying that perhaps the kinds of concerns about a party's ability to pay should be directed to the Court of Appeals. But equitable considerations that go to the necessity of the cost, you agree, are properly decided in the District Court? I think generally they are as part of the District Court's requirement to ensure that only proper costs are awarded. And that's the Fifth Circuit's rule. And we agree with that. My only point was that I think in practice, these issues do not come up very often. They're, in fact, they're exceedingly rare. And if you look at the arguments that are being made here, the sort of equitable arguments being made here, they have nothing to do with whether these are appropriate categories of costs at all, or whether they were in some way inflated. A minute to wrap up, Mr. Salmons. Thank you, Your Honor. The drafters of Rule 39 rightly concluded that supersedious bond premiums are an ordinary and appropriate category of appellate costs equally entitled to the venerable presumption favoring full recovery as other specified costs. Rule 62 already provides a process that ensures the reasonableness of bond terms, adequate notice to all parties, and ample discretion to the District Court to review and approve bond terms before these costs are incurred. Plaintiffs that are concerned about potentially bearing these costs can always agree to reduce or forego a bond. Given this framework, there is no reason to distort the clear terms and history of Rule 39 to provide the District Court another round of discretion to ignore the appellate court's entitlement determination and decide for itself whether it is fair for the losing party on appeal to bear these costs. The Fifth Circuit's decision should be affirmed. Thank you, counsel. Rebuttal, Mr. Geiser. Thank you, Mr. Chief Justice. My friend's position is introducing unnecessary complexity into Rule 39's simple and workable design. Why would the rule delegate these costs to the District Court to raise after the mandate has issued if it really wanted parties to raise these issues before the appellate panel? And the alternatives, my friend has proposed, are simply poor workarounds. It is indeed asking a lot to preemptively brief these hypothetical issues in the party's merits briefs. Rule 28 doesn't require that. Rehearing is certainly an odd fit. It's rehearing an issue that no one has ever decided. Objections to bill of costs when the bill of costs are limited to non-Rule 39e costs really are, again, ill-suited for deciding these issues. My friend cited the Second Circuit's Moore case that actually proves our point. That was a dispute over Rule 39b costs, not Rule 39e costs. And there is a compressed timetable under 39b for objecting to a bill of costs, and there's no obvious mechanism for taking evidence, hearing witnesses, or developing a record, which, regardless of whether that's necessary in this case or not, and I think it probably is, certainly will be necessary in certain cases. If a cost is improper or unfair, there's simply no obvious way to get back to the circuit after the mandate is issued without engaging in burdensome motions to withdraw the mandate, which are exceedingly rare and are generally a waste of time when district courts can resolve these disputes perfectly well in the first instance. There's simply no reason to shoehorn cost issues into other appellate procedures that just simply are not obviously designed to handle them. Even if the appellate court can make adjustments to the overall percentage, like saying in this case we'll award 2 3rds of a party's cost, which I do think is still unusual, a district court still has to exercise discretion over those taxable costs. I agree that Section 1924 gives that same type of authority to the district court that we see in Rule 39E itself. Under my friend's reading, there's really no clear administrable line between what a proper cost is and what a discretionary reduction to a cost request would be. There's no reason to invite disputes about which court should have to decide those issues and to put both the parties and the appellate courts to the task of wasting their time and resources briefing these issues when the rule itself actually signs all of these disputes to the district court. Just as Thomas asked about sandbagging, my friend really had no answer. Rule 62 doesn't address whether the cost is relevant or appropriate and it doesn't apply to this type of review. And his answer proves far too much. It would say that no bond cost should ever be disallowed for any reason, because in fact the court accepted the bond. But approving a bond is simply not the same question as whether there's an alternative form of security that would be appropriate for securing a judgment. The final point I'll make is that taxable does mean capable of being taxed. Rule 39E has no compulsory language. It doesn't say that the district court must tax these costs, even though the rule uses that directive term must four times in the neighboring subsection. Thank you, counsel. The case is submitted.